| | | |
|---|---|---|
| United States District Court | ☆ | Southern District of Texas <br> Houston Division |

J&T CHIROPRACTIC, PLLC a/k/a  §
J&T CHIROPRACTIC, LLC  §
  §
*versus*  §   Civil Action 4:22-CV-03285
  §
T&C CHIROPRACTIC, LLC f/k/a  §
T&C CHIROPRACTIC, PLLC, and  §
THY NGOC NGUYEN  §

### DEFENDANTS' CROSS-MOTION TO STRIKE AND RESPONSE TO PLAINTIFF'S MOTION TO OVERRULE OBJECTIONS AND COMPEL DISCOVERY

Defendants T&C CHIROPRACTIC, LLC f/k/a T&C CHIROPRACTIC, PLLC and THY NGOC NGUYEN file this, their Cross-Motion to Strike and Response to Plaintiff J&T CHIROPRACTIC, PLLC a/k/a J&T CHIROPRACTIC, LLC's Motion to Overrule Objections and Compel Discovery (Document 19 in the case file) and in support therefor, show the following:

#### I.   CROSS-MOTION TO STRIKE

##### A.   FACTUAL BACKGROUND

1.   Plaintiff filed its Motion to Overrule Objections and Compel Discovery ("Motion to Compel") in this case on January 5, 2023. On that date, the case was before Judge Andrew S. Hanen. As of the date of filing this Cross-Motion to Strike, the case remains before Judge Hanen. Exhibits A, B. Counsel for both Plaintiff and Defendants have agreed that the case may be referred to the Magistrate Judge, see Consent to Proceed Before Magistrate Judge, dated Jan. 5, 2023 (Document 18 in the case file), but as of this date, the referral has not yet occurred.

1

2. Judge Hanen's Civil Procedures state, in relevant part,

> Any party wishing to raise disputed discovery or other pretrial matters must arrange for a conference with the Court before filing any motion, brief, or accompanying material. The party must email the Case Manager and opposing counsel to arrange for a pre-motion conference. Prior to arranging for this conference, the parties must have actually conferred in an attempt to work out the issues. Merely sending an email or making a phone call is **not** a valid attempt to work out the dispute. The attorneys must have actually talked. See Section 7C above.
>
> The Court will schedule the pre-motion conference as soon as practicable commensurate to the demands of its docket, generally within a few days after the request is made. Unless otherwise directed, counsel may participate only by a landbased telephone.
>
> The party seeking the conference must submit a one- to two-page letter to the Court with copies to all counsel and unrepresented parties, identifying the disputes and setting out the issues to be addressed. This is not a brief and need not set out case law or argument. Instead, the letter is an agenda for the pre-motion conference and should simply set out the dispute. Opposing parties must respond in similar fashion before the Conference, with the same limitations. The letters must include a written statement that counsel have actually conferred in a good-faith effort to resolve the issues but are unable to reach an agreement. *Id.*, Rule 8.A (emphasis in original).

3. There is no indication in the Motion to Compel that Plaintiff attempted to comply with the Court's rules by arranging a conference, actually speaking with Defendants' counsel, or sending the letter to the Court. There is no Certificate of Conference attached to the Motion to Compel, because there was no conference. Plaintiff's Declaration in Support of the Motion states only that Plaintiff's counsel and Defendants' counsel exchanged some e-mails, then Plaintiff's counsel sent Defendants' counsel a letter on November 29, 2022, arguing that Plaintiff disagreed with some of Defendants' objections. Motion to Compel, Exhibit A and attachments.

4. Defendants' counsel emailed Plaintiff's counsel, informing Plaintiff's counsel that Plaintiff was not in compliance with Judge Hanen's rules, and Plaintiff's counsel replied dismissively (and inaccurately) that the case was before Judge Sheldon. Exhibit C.

### B.  ARGUMENT

5. The Motion to Compel is in flagrant violation of this Court's rules. It should be struck.

6. If, by the time this Cross-Motion to Strike is heard, the case has been transferred to Judge Sheldon, the Motion to Compel should still be struck. Plaintiff flagrantly and knowingly ignored the Court's rules governing this case at the time its Motion to Compel was filed.

7. A particularly egregious aspect of Plaintiff's filing is that Plaintiff's counsel appears to be attempting to game the system to allow the Motion to Compel to be heard without following Judge Hanen's rules. The Consent to Proceed before Judge Sheldon was filed (as Document 18 in the case file) <u>with Defendants' counsel's agreement</u> on January 5, 2023, and the Motion to Compel was filed as Document 19 in the case file later on the same day, <u>without conferring with Defendants' counsel</u>. The timing and sequence of these filings is clearly an intentional course of conduct.

### C.  PRAYER FOR RELIEF

8. The Court should therefore strike Plaintiff's Motion to Overrule Objections and Compel Discovery.

### II.  DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO OVERRULE OBJECTIONS AND COMPEL DISCOVERY

### D.  FACTUAL BACKGROUND

9. As of the date of this Response to Plaintiff's Motion to Overrule Objections and Compel Discovery (the "Response"), Defendants' Motion to Dismiss Under Rule 12(b)(6) or for More Definite Statement Under Rule 12(e), filed October 17, 2022 (the "12(b)(6)/12(e) Motion") (Document 13 in the case file) remains pending before the Court.

10.     The 12(b)(6)/12(e) Motion raises fundamental issues of the scope of Plaintiff's copyright protection under the Copyright Act of 1976, 17 U.S.C. §§101 *et seq*. (2021). In the 12(b)(6)/12(e) Motion, Defendants argue that they are not required to speculate what, if anything, is protected content in Plaintiff's "marketing fliers." Id. ¶¶ 1-3.

11.     A procedural consequence of the filing of the 12(b)(6)/12(e) Motion is that while that motion is pending, Defendants have not yet filed an Answer in this case. Plaintiffs may make certain factual allegations in their Motion to Compel which have, to date, neither been been admitted nor denied; to the extent that such factual allegations are not germane to the discovery dispute at issue in the Motion to Compel, Defendants deny all such allegations, subject to the right to respond to such allegations when Defendants file their Answer, if Plaintiff's Complaint is not dismissed under Rule 12(b)(6).

E.     ARGUMENT

12.     Plaintiff's entire Motion to Compel is excessive and unnecessary. Defendants responded to all the interrogatories and produced all the known responsive documents, subject to the stated objections. As evidence of Defendants' good faith, please examine Plaintiff's Exhibits A1 and A2. Given that live testimony by deposition or at trial is available and the witnesses are all located within 100 miles of the Court, the practical significance of the interrogatories is limited. If Defendants were to attempt to use the interrogatory answers as evidence, any remaining objections could be addressed at that time, likely by agreement between the parties.[1] There simply is very little practical significance to dispute over objections to interrogatories that, if this case continues, will very likely be superseded by live testimony.

---

[1] It is certainly possible that if Plaintiff had conferred with Defendant prior to filing its Motion to Compel, some of these issues could have been addressed, but that is unfortunately not the present situation.

13. Plaintiff's multiple requests to disregard Defendants' objections as to the number of interrogatories do not constitute a live controversy. Whether the number of Plaintiff's interrogatories is counted as Plaintiff counts them or as Defendants count them, the number is not greater than twenty-five in either case. Defendants have not failed to answer any interrogatory based on the number of interrogatories. Whichever judgment the Court renders on this category of objections will make no difference to any matter now before the Court.[2] It is a pointless exercise.

14. One fundamental problem with responding to Plaintiffs' discovery requests is Plaintiff's repeated use of the term "Infringing Work(s)." First, the term itself begs the question and is conclusory, in that the very use of the term "infringing" presumes that an infringement occurred and might be construed to constitute an admission by Defendants. Second, by leaving it up to Defendants to decide what the "Infringing Work(s)" are, Plaintiff's discovery requests require Defendants to prepare Plaintiff's case for it, which is improper, *see*, *e.g.*, *Olmert v. Nelson*, 60 F.R.D. 369, 370 (D.D.C. 1973). Finally, strictly speaking, it is logically impossible to answer Plaintiff's discovery requests that use this term. Plaintiff's Interrogatory definitions define "Infringing Work(s)" as

> documents described as infringing in Plaintiff's Complaint, including but not limited to documents identified by production numbers J&T_000005, J&T_000006, and J&T_000007, and any iterations of such documents that utilize the same graphics or layout as the Infringed Work. Plaintiff's Exhibit A3, at 4.

This definition incorporates two other items: the "documents identified in Plaintiff's Complaint" and "the Infringed Work," which is a singular term.

   a. It is necessary first to understand what Plaintiff describes as the "Infringed Work." The "Infringed Work" is defined as "the document identified by production number J&T_000004", *id.* at 3, but the document that was actually altered by Defendants is not the one described as "the document identified by production number J&T_000004," but rather

---

[2] It is possible that a future set of interrogatories might draw Defendants' objections, due to Plaintiff then exceeding 25 interrogatories. That, however, is a hypothetical situation, not before the Court at this time.

    the one described by Defendants as "the Two-Name Flyer," *see* Plaintiff's Exhibit A1, Responses No. 1 and 2, at 4-5, or one similar to it.[3] Plaintiff's entire line of questioning is incorrect as to which document was modified, going all the way back to the Complaint.

b. The "documents described as infringing in Plaintiff's Complaint" are difficult to identify, as the Complaint describes only *one* document, which "copied J&T's marketing flier in its entirely, only replacing 'J&T' with 'T&C' and updating the contact information," Complaint ¶ 11, at 2-3. It is unclear from reference to the Complaint exactly to which single document this statement refers.[4] Presumably (and on this point Defendants are speculating based on Plaintiff's definition), this statement refers to the document labeled and produced with initial disclosures by Plaintiffs as J&T_000005 (and also as J&T_000006, which appears to be the same document). The fundamental problem, as described above, is that this document was not produced from J&T_000004, but from another document, the Two-Name Flyer described by Defendants, *see* Plaintiff's Exhibit A1, Responses No. 1 and 2, at 4-5, or one similar to it.[5]

---

[3] There are significant questions as to the scope of the Plaintiff's copyright, which are raised in the 12(b)(6)/12(e) Motion. Part of the difficulty of responding to Plaintiff's discovery requests is that Plaintiff's discovery requests extend to issues that clearly are not within the scope of the copyright (for example, phone numbers, addresses, and the highway map of the Houston metropolitan area). The purpose of this Response is not to relitigate the substantive issues in the 12(b)(6)/12(e) Motion, but the open issues of scope should be, and perhaps must be, addressed before the Motion to Compel can be decided. In order to respond to discovery, Defendants cannot be forced to guess as to what, if anything, infringes Plaintiff's copyright. Defendants cannot be forced through discovery to prepare Plaintiff's case.

[4] Plaintiff could have avoided much of this confusion by simply giving the Bates number, instead of adopting a definition that incorporates other definitions and documents. Defendants should not be required to speculate what is being asked.

[5] "Subject to those objections, T&C Flyer 1 was produced prior to December 21, 2021, by Ms. Nhu 'Jenny' Tran by modifying a software version of an older flyer produced and distributed by J&T (the 'Two-Name Flyer,' not the J&T Flyer) at the direction of Defendant Thy Ngoc Nguyen to update the location addresses and telephone numbers and change the logo. One or more versions of the Two-Name Flyer were created by Ms. Tran at the direction of Defendant Nguyen and Dr. Michael Bittick, D.C. The first Two-Name Flyer was patterned after a similar flyer with an annotated Houston area map that was distributed by 1st Choice Injury Network, a competing chiropractic practice, that Defendant Nguyen observed at a law firm. Plaintiff had, however, at one point used a prior flyer with inset maps and names (see document Bates numbered D0016). T&C Flyer 1 is produced as the documents Bates numbered D0004 in Defendants' Response to Plaintiff's First Request for Production. A Two-Name Flyer is produced as document Bates numbered D0013 (although Defendants are not certain whether this is the same one that was modified to create T&C Flyer 1) and other flyers with both Defendant Nguyen's and Dr. Bittick's names created and distributed by Plaintiff are produced as the documents Bates numbered D0014 and D0015-16 (front and back)."

6

    c. Understanding that Plaintiff misidentified the work that was copied, there are multiple possibilities as to what Plaintiff's definition of the "Infringing Work" would logically be: (1) a document that altered J&T_000004 (of which there would be none, because J&T_000004 itself, which has only the Plaintiff's name on it and not Defendant Nguyen's name, was *never* altered by the Defendants); (2) J&T_000005, J&T_000006, and J&T_000007, which are derivative of the Two-Name Flyer, as also is J&T_000004; or (3) given that J&T_000005 and J&T_000006 appear to be the same document, J&T_000005 or J&T_000006 and J&T_000007, which are derivative of the Two-Name Flyer.

    d. The result of the incorrect and confusing definition is that Defendants are repeatedly forced to guess as to what Plaintiff means. Defendants answer the requests anyway in good faith, subject to objections that the interrogatories or requests for production were vague, ambiguous, or overbroad. Plaintiff's multiple discovery requests were (1) vague in that they did not refer to an identifiable document (and indeed referred only to the wrong document, J&T_000004); (2) ambiguous in that they were susceptible of more than one meaning, *see* ¶ 14.c; and (3) overbroad in that they seek to capture information that is clearly not within the scope of the copyright, *see* note 3.

15. In several instances, Plaintiff responds to Defendants' objections as to its use of conjunctive questions, for example in Interrogatory No. 3 ("involved with or knowledgeable of . . . creation, revision, display, or distribution"), Motion to Compel, §III.B.2, pp. 6-8. Defendants generally agree with Plaintiff's statement of the case law on this topic and note that the determination of whether an interrogatory constitutes a single interrogatory or multiple interrogatories is decided on a case-by-case basis. First, this issue is not a live controversy, *see* ¶ 13, so it does not need to be decided at all. Second, as to the substance of Plaintiff's response to these objections, it is self-evident from examination of Interrogatory No. 3 that being "involved with" something, which implies active

7

participation, is different from being "knowledgeable of" something, which is passive, and "creation," "revision," "display," and "distribution" are all different activities that can be performed at different times by different people; aggregating all of these diverse activities into one jumbo interrogatory does not make them a common activity. In the case of the flyers at issue, the display was done primarily by the law firms to which the flyers were given; that is clearly a different activity than creating the flyers. Finally, not only was responsive information not withheld, but by breaking the answer up into multiple responses, Plaintiff got *more* responsive information than it would have otherwise; for example, that a particular person may have been "involved with . . . creation," but not "knowledgeable of . . . distribution." *Id.* Plaintiff should be thanking Defendants for these disaggregated discovery responses, which overdeliver on Plaintiff's requests. Similar examination of the other instances in which Plaintiff complains that Defendant has provided multiple answers to its interrogatories[6] produces a similar result: by merely aggregating multiple questions into a single sentence, Plaintiff does not transform multiple questions into a single question.

16. Responding to certain other of Plaintiff's actual requests regarding its interrogatories, in the order presented by Plaintiff:

   a. Untimely response, Motion to Compel, §II.A, p.6: Defendants admit that the response was late. The responses served electronically on November 16, 2022, *see* Plaintiff's Exhibits A1 and A2, Certificates of Service, were more complete than those responses would have been if they had been served on November 9, 2022, which accrues to Plaintiff's benefit. Plaintiffs have neither alleged nor demonstrated any harm suffered by the seven days' delay.[7] There is no doubt that the Court has control over its own deadlines for discovery and can excuse noncompliance with a procedural rule, particularly where the party to which the response is

---

[6] *Cf.* Motion to Compel, §III.B.3, p. 9, discussing responses to Interrogatories Nos. 4 and 5. "Viewing" and "possessing" are clearly different activities, as are "displaying" and "distributing."
[7] Defendants are happy to offer to extend any discovery deadline in this case by 7 days if Plaintiff so desires.

    made is not unfairly prejudiced. *See*, *e.g.*, *Burns v. Thiokol Corp.*, 483 F.2d 300, 307 (5th Cir. 1973)(District Court has broad discretion); *cf. Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)(Court can excuse noncompliance); *Somlyo v. J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991)(Court can allow departure from rules); *U.S. v. Eleven Vehicles, Their Equipment and Accessories*, 200 F.3d 203, 215 (2d Cir. 2000)(departure from rule allowed when no unfair prejudice to opposing party). If this dispute is even being considered, rather than the Motion to Compel having already been struck under Judge Hanen's Rule 8.A, that very fact demonstrates that the Court indeed has sound discretion to apply the rules concerning discovery.

b. General objections, Motion to Compel, §III.A, p.6: Defendants agree with Plaintiffs' general statement of the law, *see id*. and *id.* §II, p.4 and cases cited therein, that, as a general rule, general objections are disfavored. The implication to draw from those cases is not, however, that a general objection should never be used. For example, objection 13 actually clarifies for the parties' benefit which documents are being discussed. The objections to the use of the terms "Infringed Work"[8] and "Infringing Work(s)" in Plaintiff's discovery requests could have been repeated in each response and the Defendants' instructions for the use of actual descriptive terms repeated in each response, but it is clearer and more efficient for both parties and the Court for it to be done once and done consistently throughout all the discovery responses. Rather than generally objecting to the general objections, the parties and the Court would be better served by Plaintiff holding its own general objection to the general objections until a discovery response is used by Plaintiff, then if Defendants at that time assert one of the general objections, a decision can be made at that time as to whether the document or

---

[8] *See* ¶ 14 for discussion of the difficulties with the term "infringed work."

9

interrogatory response is admissible, notwithstanding Defendant's objection. *See also* ¶ 12 (Plaintiff's Motion to Compel is excessive and unnecessary).

c. With respect to Plaintiff's definition of "You," Motion to Compel, §III.B.3, p. 9: Plaintiff helpfully restates its definition of "You" in the Motion to Compel:

> "You" and "Your" refers, individually or collectively so as to render the Request as broad as possible, T&C Chiropractic, LLC f/k/a T&C Chiropractic, PLLC ("T&C"), and Thy Ngoc Nguyen ("Nguyen") T&C's past, present, and future owners, members, directors, officers, employees, contractors, representatives, agents, and all other persons claiming by, through, or under T&C, including but not limited to Nguyen, and his past, present, and future spouse, children, heirs, assigns, representatives, and agents, and all other persons claiming by, through, or under Nguyen, or otherwise within the possession, custody, or control of T&C or Nguyen. *Id.*

It is impossible from that definition to understand exactly who is being asked whether he or she "viewed" or "came into possession" of something, as asked for example in Interrogatory No. 4. Defendants' response in this regard is exactly this: "Defendants further object to this interrogatory as vague, in that it is unclear exactly to whom 'You' refers; there are two Defendants, one of which is an entity." Plaintiff's Exhibit A1, Response No. 4, at 7. One way to approach the problem would be to assume that "You" is meant collectively, but it is unlikely that Defendant Nguyen's "future . . . children" would have much to offer on the subject. The better approach would be that if Plaintiff offers the discovery response in evidence at some point in the future and it has not yet been superseded by live testimony by that time, and then Defendants continue to object on the ground of vagueness as to exactly whom is being addressed by the question, the Court can then make a determination as to whether this definition of "You" is too vague. Otherwise, this response by Plaintiff is yet another waste of the parties' and the Court's time. *See generally* ¶ 12.

17. Responding to certain other of Plaintiff's actual requests regarding Defendants' Objections to its Requests for Production, in the order presented by Plaintiff:

   a. It appears that most of Plaintiff's requests in the Motion to Compel involve the lack of responsive documents. In every instance where documents responsive to the Request for Production existed, they were produced. In many cases they were produced subject to objections, but documents that do not exist cannot be produced. Just because Plaintiff generates a request, however outlandish, does not mean that there will always be documents responsive to that request. Indeed, Plaintiff complains that the document production was late, *see* Motion to Compel, §II.A, p.6, yet it benefits from the additional time taken by Defendants to search for responsive documents, *see* ¶ 16.a.

   b. Plaintiff's request regarding Defendants' response to Requests for Production Nos. 23 and 24, Motion to Compel, §V.11, p. 19, is puzzling, because Plaintiffs quote from the letter that Defendants' counsel sent to Plaintiff's counsel regarding Plaintiff's infringement claim, so obviously Plaintiff already has the responsive document. As noted in Defendants' response to Interrogatory No. 11,

   > Defendants assumed that the letter from Ms. McCord regarding infringement must have been referring to the J&T Chiropractic logo, because it would have been ridiculous to assume that a map of the greater Houston area with added locations and contact information would be protectable by copyright, as annotated maps similar to the T&C Flyers and J&T Flyer are ubiquitous in online search engines and in advertising for many businesses in the Houston area, such as automobile dealers and furniture stores. Plaintiff's Exhibit A1, Response No. 11, at 12.[9]

   This response answers the question fully and completely; there are no responsive documents to a copyright claim, because a copyright claim was never contemplated by

---

[9] *See also id.*, Response No. 12, at 13: "As of the date of the letter, June 28, 2022, Plaintiff had not identified to Defendants any protectible interest in the J&T Flyer that would be recognized under the Copyright Act, and still has not identified any such protectible interest other than the J&T Flyer's status as a work of art. The J&T Flyer's status as a 'work of art' does not apply to the T &C Flyers because the J&T Flyer was produced for hire, produced in more than 200 copies, and used commercially in advertising and marketing."

11

Defendants when Plaintiff sent its demand letter regarding "infringement." Defendants believed that Plaintiff was alluding to trademark infringement.

c. Plaintiff's requests to remove objections to Requests for Production Nos. 25 and 26, Motion to Compel, §V.12, p. 20, are untimely and seek to improperly inquire into Defendants' legal strategies. Of course documents that will be used as exhibits at trial will be produced at the pretrial conference or at such other time as designated by the Court. Defendants' request at this stage of litigation is premature and another waste of the parties' and the Court's time. *See generally* ¶ 12.

## F. PRAYER FOR RELIEF

18. If the Court does not strike Plaintiff's Motion to Overrule Objections and Compel Discovery due to its being in violation of the Court's rules, Plaintiff's Motion to Overrule Objections and Compel Discovery should be denied on the merits for the reasons set forth in Sections D and E. Dated January 26, 2023.

Respectfully submitted,

[signature]

James W. Bowen
Attorney-in-Charge for Defendants T&C
CHIROPRACTIC, LLC f/k/a T&C CHIRO-
PRACTIC, PLLC and THY NGOC NGUYEN
Southern District ID No. 17017
Texas Bar No. 00787113
700 Milam, Suite 1300
Houston, Texas 77002
(713) 353-8760
Fax No. (713) 353-4601
jbowen@jbowenlaw.net

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon the counsel of record listed below by email on the 26th day of January, 2023.

Shannon A. Lang
shannon.lang@shannonlanglaw.com
Attorney-in-Charge for Plaintiff J&T CHIROPRACTIC,
PLLC a/k/a J&T CHIROPRACTIC, LLC
Lang & Associates, PLLC
1903 Vermont Street
Houston, Texas 77019

Jessica Hughes
Jessica.hughes@shannonlanglaw.com
Counsel
Lang & Associates, PLLC
1903 Vermont Street
Houston, Texas 77019

James W. Bowen